# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TERRY WALDRON, RAY SUNDINE, JR., MARTIN J. MACK, WILLIAM VETTER, and RONALD CHIADO, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 07 C 286 |
| WILLIAM E. DUGAN, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

In this action, the Plaintiffs, five members of Local Number 150 of the International Union of Operation Engineers (the "Union"), allege that Defendant William E. Dugan, the Union's president, CEO and business manager, has forced more than 125 Union employees to pay him kickbacks of $100 per month in order to retain their jobs. They also claim that he has converted, for his own use, the property of the Union and the assets of its Apprenticeship and Skill Improvement Fund (the "Fund").

Plaintiffs bring six claims against Dugan. Count I alleges that Dugan breached his fiduciary duties as a labor organization officer under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a) (2000), by requiring union employees to pay him $100 each month. (Compl. ¶¶ 12-14.) Count II alleges that Dugan's appropriation of union assets, including the labor of union employees, was also a breach of his fiduciary duty under section 501 of the LMRDA. (Compl. ¶¶ 19-20.) In Count III, Plaintiffs charge Dugan with violating his fiduciary duties under ERISA sections 404 and 406, 29 U.S.C. §§ 1104, 1106, by appropriating Fund assets, including the labor of Fund employees. (Compl. ¶¶ 28-29.) In Count IV, they allege that Dugan's extraction of payments and appropriation of Union assets constituted a breach of the Union's bylaws, actionable as a breach of contract under Labor-Management Relations Act ("LMRA") section 301, 29 U.S.C. § 185. (Compl. ¶¶ 30, 32, 35.) Finally, Counts V and VI allege state law claims for

violations of Dugan's fiduciary duties and breach of contract. (Compl. ¶¶ 36-38, 39-41.)

Dugan has moved to dismiss all of these claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and under Rule 12(b)(7) for failure to join Joseph Ward, another Union official allegedly involved in wrongdoing, as a necessary additional defendant. (Mot. to Dismiss [34] ¶¶ 1-5.) The court overruled Dugan's "necessary party" objection (Minute Entry [56], July 31, 2007), but reserved ruling on Dugan's arguments that all claims other than the ERISA claim are untimely; that the ERISA claim is procedurally barred; that Plaintiffs' state law contract claim is preempted by ERISA; and that both of Plaintiffs' state law claims should be dismissed if the court dismisses the federal claims. For the reasons set forth below, the court dismisses the state law claim for breach of contract (Count VI). In all other respects, the motion to dismiss is denied.

## BACKGROUND

The allegations of the Plaintiffs' First Amended Complaint are presumed true for the purposes of this motion to dismiss, and are recounted in the light most favorable to the Plaintiffs.

**The Parties, the Union and the Fund**

Dugan has been a Union member for over fifty years. (Compl. ¶ 4.) He was first hired to work for the Union as a business agent in 1962. (*Id.*) He then rose within the Union's ranks, becoming its chief executive officer, the president and the business manager in approximately 1986—a position he held as of the time the First Amended Complaint was filed. (*Id.*)

Plaintiffs are five members of the Union, which is one of the largest locals in the United States, with roughly 22,000 members. (Compl. ¶¶ 2, 5.) The Union has craft jurisdiction over employees who operate motorized equipment in the construction, building and landscaping industries. (*Id.* ¶ 5) The Union employs more than 125 salaried employees (*id.* ¶ 8), including three of the five plaintiffs in this action. (*Id.* ¶ 10.) It also owns many acres of Illinois farm land

2

where it grows and harvests crops.[1]  (*Id.* ¶ 16.)

Dugan is also the Chairman of the Board of Trustees of the Fund.  (Compl. ¶ 24.)  The Fund is an apprenticeship and skill improvement program operated for the benefit of Union members and financed by mandatory contributions from employers who enter into collective bargaining agreements with those members.  (*Id.* ¶ 22.)  Each of the Plaintiffs' employers contributes to the Fund, and each Plaintiff is eligible to receive its benefits.  (*Id.*)  The Fund employs salaried personnel as instructors for its training programs, and also owns various assets, including vehicles and diesel fuel, presumably for the purpose of training its participants.  (*Id.* ¶ 27.)

**The "Christmas Fund"**

For about fifteen of the last twenty years, including during 2006, Dugan required the 125 salaried Union employees to pay him $100 each month.[2]  (Compl. ¶ 8.)  He stored the money in his private safe (*id.*), and he took the money for his own personal use and benefit (*id.* ¶ 13).  He referred to the money he acquired in this way as the "Christmas Fund."  (*Id.* ¶ 11.)  He told his employees that they could afford these assessments because he took the monthly payments into account when setting the amount of their salaries, a power conferred on him by the Union's bylaws.  (*Id.* ¶ 10.)  Employees who were late in these payments were allegedly admonished and browbeaten, at Dugan's direction, by other Union personnel, including by Union Vice President Jim Sweeney and Recording Corresponding Secretary Steve Cisco.  (*Id.* ¶¶ 8-9.)  Sweeney, Cisco, and others caused union employees to understand that failure to contribute to Dugan's "Christmas Fund" could result in termination.  (*Id.* ¶ 9.)

In September of 2006, at a Union meeting, someone asked Dugan how he used the money

---

[1] Why a local of the International Union of Operation Engineers would have a sideline in farming is a curiosity that the parties have not yet explained to the court.

[2] To state the obvious, substantial amounts of money are allegedly involved: 125 employees "donating" $100 per month amounts to $150,000 per year, or approximately $2,250,000 over fifteen years, without accounting for interest.

in the "Christmas Fund." He replied that "we're going someplace we hadn't ought to be." (Compl. ¶ 11.) Plaintiffs allege that Union members who subsequently asked for the minutes of that meeting were "stonewalled." (*Id.*)

**Other Appropriations of Union and Fund Resources**

Dugan appropriated crops from the Union, using Union personnel and Fund equipment. From the first quarter of 2001 through the first quarter of 2006, Dugan caused a Union employee, Mike Foulk, to make twenty-one round trips transporting loads of the Union's crops to Dugan's farm. (Compl. ¶¶ 16, 19.) Dugan did not reimburse the Union for the fair market value of the crops, nor for the time spent by Foulk working for Dugan personally, rather than for the Union. (*Id.* ¶ 19.) Dugan also used Union resources to pay for tolls and miscellaneous expenses during Mr. Foulk's journeys. (*Id.*) On these trips, Foulk drove a truck that belonged to the Fund, and fueled it with diesel fuel owned by the Fund. (*Id.* ¶ 28.)

Dugan also allegedly converted property belonging to the Fund for his own use, with the help of Union personnel, using Fund equipment. At an unspecified time, Foulk, at Dugan's behest, transported a new 963 CAT Loader (valued at more than $250,000), two new 500-gallon fuel tanks, and a cyclone fence to Dugan's own farm in Maryland, using a tractor semitrailer that belonged to the Fund. (Compl. ¶ 29.) The First Amended Complaint also states that Dugan then "converted and misappropriated" these items to his own use, and although it does not specify who had owned them previously, the surrounding context suggests that the Plaintiffs believe that these things belonged to the Fund. (*Id.*)

Similarly, at an unknown time, Dugan caused Frank Bodgen, a Fund employee, to construct a number of items, including buffalo feeders, storage racks, and a flagpole, using supplies and materials that belonged to the Fund. (Compl. ¶ 29.) Foulk then transported these items to Dugan's farm in a Fund tractor semitrailer, and Dugan kept them for his personal use. (*Id.*)

Finally, Dugan used Fund resources to repair farm equipment that he owned. Dugan

4

caused an unidentified Fund employee, using Fund supplies and materials, to repair his 580 K combination backhoe and completely recondition his 350 bulldozer. (Compl. ¶ 29.) Dugan also caused the Fund to reimburse the Union for its purchase of a hydraulic valve, which was installed in a tractor he owned. (*Id.*)

## **DISCUSSION**

On a motion to dismiss, the court tests the sufficiency of the complaint; it does not decide the merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The plaintiff must plead sufficient facts to give fair notice of the claim and the grounds upon which it rests, and those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal punctuation omitted); *see Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964-65, 1973 n.14 (2007). The court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atlantic*, 127 S. Ct. at 1965. Dugan makes six arguments for dismissal of the Plaintiffs' claims: (1) statute of limitations, (2) laches, (3) failure to exhaust ERISA plan remedies, (4) failure to plead the ERISA claim derivatively, (5) preemption, and (6) discretionary dismissal of state law claims. The court addresses these arguments in turn.

**I.      Statute of Limitations**

Dugan first argues that all claims other than Count III must be dismissed because they are barred by the applicable statute of limitations. (Mot. to Dismiss ¶ 1.) Dugan asserts that Illinois' general catch-all statute of limitations, 735 ILCS 5/13-205, applies to all five claims (Def.'s Mem. in Supp. of Mot. to Dismiss [36, hereinafter "Def.'s Mem."] at 5), and the Plaintiffs have not disputed this. (Pls.' Resp. in Opp. to Mot. to Dismiss [44, hereinafter "Pls.' Opp."] at 10.)[3]   The First

---

    3      It is far from clear, however, that the same statute of limitations applies to all five
                                                                                  (continued...)

Amended Complaint was filed on January 22, 2007.

It is "irregular" to bring a motion to dismiss on statute of limitations grounds, because a complaint does not need to anticipate or overcome affirmative defenses. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). The court will only grant such a motion if the Plaintiffs have made assertions within their complaint that establish the defense. *Id.* Thus, the question is not whether the Plaintiffs have pleaded that their claim is timely; it is whether they have effectively admitted that it is not.

On the basis of the facts alleged in the First Amended Complaint, all five counts could plausibly be thought to fall within the applicable limitations period. Count I is a LMRDA claim based upon the allegation that Dugan threatened to terminate Union employees if they refused to donate to his "Christmas Fund." (Compl. ¶ 8.) This conduct allegedly continued into 2006 (*id.*), which is well within the five-year limitations period.

Count II alleges a wrongful conversion of crops and other assets belonging to the Union. (Compl. ¶ 19.) This is alleged to have occurred on twenty-one occasions from 2001 through the first quarter of 2006 (*id.*), so there is likewise no limitations problem with respect to Count II.

Count IV charges that the same facts that constitute the LMRDA claims under Counts I and

---

[3](...continued)
claims. Both fiduciary duty claims under LMRDA section 501, 29 U.S.C. § 501, and non-hybrid contractual claims under LMRA section 301, 29 U.S.C. § 185, are subject to the state statute of limitations which most closely resembles the federal claim being brought by a plaintiff. *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211-12 (7th Cir. 1996) (non-hybrid LMRA claims); *Trs. of Operative Plasterers and Cement Masons' Local Union Officers and Employees Pension Fund v. Journeymen Plasterers' Protective & Benevolent Soc'y, Local Union No. 5*, 794 F.2d 1217, 1221 n.8 (7th Cir. 1986) (LMRDA claims). But this does not mean that the federal claims and two state law claims which Dugan addresses in his motion to dismiss are all subject to the *same* state statute of limitations. To be sure, those claims in which fiduciary duty is the dominant element might take the catch-all limitations period, which applies to breach of fiduciary duty claims. *See Fuller Family Holdings, LLC v. N. Trust Co.*, 371 Ill. App. 3d 605, 618, 863 N.E.2d 743, 756 (1st Dist. 2007). Other claims, however, such as the contractual LMRA claim in Count IV, might more appropriately take the ten-year limitations period applicable to actions on written contracts. 735 ILCS 5/13-206. The court need not decide this question, however, as neither of the plausible limitations periods would require dismissal of any claim in this action.

II, also constitute a breach of the Union's bylaws, which is actionable under LMRA section 301, 29 U.S.C. § 185. (Compl. ¶¶ 30-32, 35.) Similarly, Counts V and VI are state law claims that are premised, at least in part, on Dugan's alleged conversion of Union assets. (*Id.* ¶¶ 38, 41.) Because, as discussed above, the First Amended Complaint states that some of these acts took place in 2006 (*id.* ¶¶ 8, 19), there is no apparent limitations problem with Counts IV-VI.[4]

Thus, Dugan's argument that Counts I-II and IV-VI should be dismissed on statute of limitations grounds fails.

## II. Laches

Dugan next argues that all the claims in this action brought by three of the Plaintiffs—Terry Waldron, William Vetter, and Ronald Chiado—must be dismissed under the equitable doctrine of laches. (Def.'s Mem. at 5-6.) Before a court will find that an action has been brought in such an untimely manner that it should be dismissed under the doctrine of laches, the moving party must prove both (1) a lack of diligence by the plaintiff and (2) resulting prejudice. *Kansas v. Colorado*, 514 U.S. 673, 687 (1995); *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006). Dugan, however, has not made any showing of prejudice in his memoranda, confining his laches argument to the issue of diligence. (Def.'s Mem. at 5-6; Def.'s Reply [48] at 10.) Without a showing of prejudice to Dugan, this court declines to dismiss Plaintiffs' claims on laches grounds.

## III. Failure to Exhaust ERISA Plan Remedies

Dugan next argues that Count III, the ERISA fiduciary duty claim, must be dismissed because the Plaintiffs failed to exhaust their administrative remedies. Failure to exhaust plan remedies is a non-jurisdictional affirmative defense to an ERISA action. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 280 (3d Cir. 2007); *Graham v. U. Parcel Serv.*, __ F. Supp. 2d ___, No. 07 C

---

[4] Because the First Amended Complaint alleges claims which have arisen within the five-year limitations period, the dispute between the parties regarding whether the statutory period was tolled under the "continuing violations" theory is moot, at least in the context of this motion to dismiss.

7

2634, 2007 WL 2903089, at *4 (N.D. Ill. Oct. 1, 2007); see Gallegos v. Mount Sinai Med. Ctr., 210 F.3d 803, 810 (7th Cir. 2000) (describing failure to exhaust remedies as a "defense" to which estoppel could apply).

Complaints may not be dismissed for failing to rebut affirmative defenses; rather, dismissal is only appropriate if a plaintiff pleads herself out of court by alleging facts that affirmatively establish the defense. Hollander, 457 F.3d at 691 n.1. In other words, a plaintiff's silence regarding affirmative defenses is golden. Dugan argues only that the Plaintiffs failed to allege exhaustion. (Def.'s Mem. at 7.) Therefore, this argument fails as well.

**IV.     Failure to Plead ERISA Claim Either as a Class Claim or as a Derivative Claim**

Next, Dugan argues that Count III should be dismissed because it was not pleaded as a class action nor as a derivative claim. (Def.'s Mem. at 9-11.) The Plaintiffs argue that they are not required to plead their ERISA fiduciary claim in any special fashion, so long as they are seeking relief that will benefit the Fund as a whole. (Pls.' Opp. at 13-14.) Although it is a close question, the Plaintiffs have the better of this argument as well.

The court notes at the outset that this objection is a matter of form, not substance. First, Dugan chairs the Fund's Board of Trustees (Compl. ¶ 24), and is unquestionably aware of this action. If the Board feels that the Plaintiffs in this case are not fairly and adequately representing the interests of the Fund, it is free to seek leave to intervene. Second, if the court were to determine that Count III must be pleaded derivatively, it has little doubt that the ERISA claims would ultimately remain in the case. Plaintiffs have pleaded that a demand would be futile with respect to their LMRDA claim (see Compl. ¶ 3), so if the court found that a derivative action were necessary, Plaintiffs would no doubt seek (and receive) leave to amend Count III to add a similar allegation of futility, and to remedy the lack of verification. Thus, the question is not whether the Plaintiffs may proceed with this lawsuit at all; it is whether they will be required to replead Count III before doing so.

8

None of the cases cited by Dugan are controlling on this question. Dugan first cites a line of cases, following *Massachusetts Mutual Life Insurance Co. v. Russell*, each of which hold that an individual plaintiff who has been improperly denied benefit payments cannot obtain personal relief in a suit for breach of fiduciary duty brought under ERISA sections 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). *See Russell*, 473 U.S. 134, 139-42 (1985). Rather, relief under section 502(a)(2) is limited to those plaintiffs who are seeking to recover losses incurred by the plan as a whole, rather than those they incurred personally. *See id.* at 140-42, 144; *Lee v. Burkhart*, 991 F.2d 1004, 1006, 1009 (2d Cir. 1993) (plaintiffs who were denied individual benefit payments cannot sue under section 502(a)(2)); *Anderson v. Ill. Bell Tel. Co.*, 961 F. Supp. 1208, 1211-1213 (N.D. Ill. 1997) (plaintiff cannot sue for wrongful denial of individual benefits under section 502(a)(2)). This principle does not bar the Plaintiffs' claim here: They are seeking, in Count III, to have Dugan make restitution *to the Fund* for allegedly converting its assets. (Compl. ¶ 29.) None of these cases stands for the proposition that a section 502(a)(2) claim must be pleaded either derivatively or as a class action.

Dugan also argues that *Thornton v. Evans* controls on this issue; in *Thornton*, the Seventh Circuit considered the circumstances in which ERISA plan participants might bring suit against non-fiduciaries. In such cases, *Thornton* held, plaintiffs must bring suit either derivatively on behalf of the plan, or as representatives of a class of all plan beneficiaries. 692 F.2d 1064, 1079-80 (7th Cir. 1982). In reaching that conclusion, the *Thornton* court observed that suits against non-fiduciaries were not explicitly contemplated by ERISA, but were instead judicially-created supplements to the relief available under ERISA. *Id.* at 1079. Significantly, the court distinguished this judicially-created right to relief from the statutory right under ERISA section 502(a), which specifically authorizes *individual* suits by participants against plan fiduciaries. *Id.* at 1080 n.35. Thus, *Thornton* did not hold, or even state, that an action such as this one, by a plan participant against a plan *fiduciary* under section 502(a)(2), must be pleaded derivatively or as a class action.

Some courts have in fact required that a section 502(a)(2) claim by a plan participant against a trustee be pleaded either derivatively or as a class action. *See Hartline v. Sheet Metal Workers Nat'l Pension Fund*, 134 F. Supp. 2d 1, 20-21 (D.D.C. 2000) (such claims must be brought derivatively on behalf of the plan); *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *3 (N.D. Ill. April 16, 1996) (applying this rule, and describing it as the holding of *Thornton*); *see also Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (holding that plaintiffs must take "adequate steps under the circumstances properly to act in a representative capacity" and that the devices of derivative suits, class actions, and mandatory joinder were all proper means of doing so).

None of these holdings are binding on this court, however, and the court respectfully declines to impose such a requirement. The courts that have required plaintiffs to proceed derivatively or as class representatives are motivated by legitimate policy concerns: allowing many individual participants to sue trustees for breach of fiduciary duty creates a risk that the interests of absent plan members will be inadequately protected, as well as a risk of multiple redundant lawsuits. *See, e.g.*, *Coan*, 457 F.3d at 260; *Montgomery*, 1996 WL 189347, at * 3. But these concerns, however valid, are insufficient to overcome the fact that neither ERISA itself, nor the Federal Rules of Civil Procedure, require ERISA participants to bring section 502(a)(2) claims derivatively.

ERISA is a "comprehensive and reticulated statute, the product of a decade of congressional study." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)) (quotation marks omitted). For this reason, courts should be very reluctant to tinker with its plain language, especially regarding its enforcement scheme. *Id.* As noted, section 502(a)(2) expressly grants the right to bring fiduciary duty claims to "participants," and does not appear to require them to sue derivatively or to use any other special procedural devices to represent absent parties. 29 U.S.C. § 1132(a)(2); *see*

10

*Thornton*, 692 F.2d 1080 n.35 (noting that section 502(a) authorizes suits by individuals against plan fiduciaries).  Likewise, neither Federal Rule of Civil Procedure 23, which applies to class actions, nor Rule 23.1, which applies to derivative suits, requires all suits against ERISA fiduciaries to be brought using special procedures.  *See* FED. R. CIV. P. 23 (containing no provisions making class action procedures mandatory in any type of lawsuit); *id.* at 23.1 (applying derivative procedures only to suits involving corporations or unincorporated associations); *Coan*, 457 F.3d at 257-58 (noting that Rule 23.1 does not apply to suits on behalf of an ERISA plan).

A rule requiring section 502(a)(2) claims to be brought in a manner analogous to derivative shareholder lawsuits might be a wise one, but the court is unwilling to add such a requirement to ERISA's carefully elaborated design.  For this reason, Dugan's objection to Count III on the ground that it was not pleaded derivatively is overruled.

**V.    ERISA Preemption**

Next, Dugan argues that Count VI must be dismissed because it is a state law breach of fiduciary duty claim that is preempted by ERISA.  (Def.'s Mem. at 12.)  The Plaintiffs have not responded to this argument in either their Response or their Sur-Reply.

Count VI is somewhat difficult to decipher.  Plaintiffs have characterized it as a "common law contract claim," and have incorporated the breach of contract allegations made in Count IV, the LMRA breach of union contract claim.  (Compl. ¶ 33-35, 39-40.)  Count VI is thus best described as a state law contract claim, based upon Dugan's alleged contractual duties to the Union.  Significantly, however, it also charges that Dugan has breached, *inter alia*, "the fiduciary obligations and the trust" that he owes to the Fund "by virtue of the [Union] bylaws."  (*Id.* ¶ 41.)  It claims damages to both the Union and the Fund, and seeks a judgment and relief in favor of both.  (*Id.*)  Thus, the claim appears to be a hybrid between a breach of contract claim and a breach of fiduciary duty claim, and apparently invokes, at least in part, the fiduciary obligations Dugan owed as an ERISA plan trustee.

Claims that an ERISA trustee has committed a breach of fiduciary duty under state law are generally preempted by ERISA. *See, e.g., Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999). The general test for ERISA preemption asks whether the state law claim "relates to" the ERISA plan, which will be the case whenever it has any connection to the plan. *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96-97 (1983). Breach of fiduciary duty claims quite obviously have a connection with an ERISA plan, as they relate entirely to the duties of plan trustees. *Smith*, 170 F.3d at 613. So Count VI, which alleges a breach of ERISA fiduciary duties, is preempted by ERISA. Therefore, this portion of Dugan's motion is granted, and Count VI is dismissed.

**VI.    Discretionary Dismissal of State Law Claims Under Section 1367(c)**

Finally, Dugan asks the court to dismiss the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3). Section 1367(c)(3) permits the court to decline supplemental jurisdiction if it has dismissed all the claims falling under its original jurisdiction. As the court has not dismissed the federal claims in this case, § 1367(c)(3) does not apply.

## **CONCLUSION**

For the reasons stated above, Dugan's motion to dismiss [34] is granted as to Count VI, and otherwise denied. Dugan is directed to answer Counts I-V within twenty-one days.

ENTER:

Dated: December 14, 2007

_____
REBECCA R. PALLMEYER
United States District Judge